JULIA M. JAYNE (State Bar No. 202753)
E-Mail: *julia@jaynelawgroup.com*
JAYNE LAW GROUP, P.C.
260 California Street, Suite 1001
San Francisco, California 94111
Telephone: (415) 623-3600
Facsimile: (415) 623-3605

Attorneys for Defendant
PATRICK CAMPION

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PATRICK CAMPION<br><br>Defendant. | Case No. CR 11-00796 CRB<br><br>**PATRICK CAMPION'S SENTENCING MEMORANDUM AND REQUEST FOR DOWNARD VARIANCE UNDER 18 U.S.C. § 3553(a)**<br><br>Date: TBD<br>Time: 1:30 p.m.<br>Judge: Hon. Charles R. Breyer |

The Defendant Patrick Campion, through his counsel, Julia M. Jayne, hereby submits the following Sentencing Memorandum in support of his request for imposition of a probationary sentence of two years, a $2,000 fine and restitution in the amount of $14,500 and all other standard terms and conditions.

## INTRODUCTION

This spring, Defendant Patrick Campion will stand before this Court for sentencing. Mr. Campion pled guilty to one count of bid rigging. Mr. Campion has no prior convictions and has never previously been incarcerated for any reason. However, in this case, due to the numbers-driven sentencing guidelines applicable to the volume of commerce attributable to the properties Mr. Campion was involved in (stipulated volume of commerce of $515,400), he faces an advisory guideline range of 8-14 months (Level 11, Zone B), prior to any reduction for his cooperation pursuant to 5K1.1.

The U.S. Probation Officer recommends a sentence of three years' probation, thus taking into account Mr. Campion's lesser involvement, though of course not taking into account Mr. Campion's cooperation with the government. Mr. Campion agrees with the probation officer's recommendation of a non-custodial sentence, and due to his cooperation and limited role, recommends a probation term of two years (the statutory and sentencing guideline term is 1-5 years) and a fine on the lower end of his plea agreement. Thus, for the reasons set forth below, it is respectfully submitted that the Court should sentence Mr. Campion to a term of two years' probation. Such a sentence would be sufficient, but not greater than necessary, to fully satisfy the sentencing objectives this Court must consider under 18 U.S.C. § 3553(a).

## PROCEDURAL BACKGROUND

Mr. Campion was initially charged by Information on October 27, 2011 and made his initial appearance on November 29, 2011. On October 27, 2017, Mr. Campion pled guilty to a single violation of 15 U.S.C § 1 – bid rigging (after a mail fraud count was dismissed).

# DISCUSSION

## I. FACTUAL BACKGROUND AND HISTORY

### A. Background of Mr. Campion

Mr. Campion is 48 years old. He was born in Los Gatos, California and has lived in Northern California for much of his adult life. He currently resides in Santa Barbara. PSR ¶ 41, 49. Because he needed additional income, Mr. Campion sold his home in the Bay Area and moved his family to Santa Barbara, where he now works in purchasing, remodeling and selling homes.

Because Mr. Campion is self-employed in the real estate field, his income is unreliable. He has been in debt to his former business partner for some time, and is making efforts to pay off funds due to a loss taken on a property. PSR ¶ 65. It has been a struggle to build up his business in Southern California, but he is hopeful that once he has fewer debts, his income will increase and he can contribute to a greater share of the household expenses. His wife's income as a book publisher provides the main support for the family, but also includes a great deal of travel, which leaves Mr. Campion as the primary caretaker for their young daughter.

Mr. Campion is responsible for driving his daughter to and from school, to her extracurricular activities, and watching her during school holidays. His ability and opportunity to care for his child is critical. Mr. Campion, despite the stress of this conviction and the employment limitations he will endure due to a felony conviction, is the glue that holds his family together and he hopes to be able to continue to have a somewhat flexible work schedule so he can take care of his daughter and other household needs.

Mr. Campion is described by those who know him well as genuine, humorous, full of integrity, hardworking, remorseful, a good parent, and even more careful as a result of the instant offense. PSR ¶ 46-48. *See* Declaration of Julia M. Jayne ("Jayne Decl."), Exhibit A, letters. No one who knows Mr. Campion can fathom him being part of the criminal justice system. As the letters attached to this Sentencing Memorandum demonstrate, Mr. Campion is loved and respected by many people in his family and community. *Id.*

Overall, this offense was a complete aberration to every other aspect of Mr. Campion's life, as he has tried to set a good example for his daughter by leading a moral and honest life. Unfortunately, in this instance, he got swept up in the group mentality, succumbed to peer pressure, agreed to go along with the group against his better judgment, and made very poor decisions for the sake of not causing trouble and being able to maintain his business.

### B. The Offense Conduct

So how does a person described to be honest and hard-working end up in the current situation: facing sentencing for a federal felony conviction for bid-rigging? In Mr. Campion's case, it is primarily because he got bullied into participating, and the evidence supports this conclusion. He was not present when the bid rigging started, and he participated for a very short amount of time. *He only accepted one actual payout in the amount of $2,000.* The rest of the alleged loss represents pay/owes from a paper tally-sheet kept by someone. Thus, while Mr. Campion recognizes he should have stood up for himself and not agreed to participate, he did identify nine properties in which he purportedly refrained from bidding on. In some instances, he did not even have a genuine interest in the properties, but agreed to go along with it because he was so infuriated by the primary participants' pressure and behavior. Of course, Mr. Campion now appreciates that this conduct itself was not a legitimate or legal way to do business and he now faces the consequences of his poor decisions. Unfortunately, at the time, he neglected to weigh or consider these consequences and instead became focused on avoiding conflict and being left alone by people he perceived as bullies.

Yet as soon as he mustered the courage and realized the gravity of what was really happening, he stopped participating. This is reflected in his relatively low volume of commerce and by the fact that he only ever received one cash payment and only purchased **one property**. He ultimately decided that the pressure and the awkwardness of the whole situation were not worth whatever business benefits there may have been. He participated for <u>only four months in 2010</u>.

Accordingly, Mr. Campion should rank as one of the least involved participants. He

became involved, yes. But he withdrew in a relatively quick time frame. And he was never friends, colleagues or had any relationship with any of the other defendants. To the contrary, he was very bothered and upset by the manner in which they approached him and bullied him. And given his temperament of conflict avoidance, he went along instead of telling them to leave him alone. *See* PSR ¶ 42.

Further, since his arraignment seven years ago, Mr. Campion has led a law-abiding life, which this Court can expect he will continue to lead. Of course, the stress of a felony conviction has weighed upon him tremendously throughout the years, and he hopes he can continue to work and help support his family despite the permanent felony record. Indeed, the conviction alone serves as a tremendous embarrassment, employment limitation and negative blight on Mr. Campion's otherwise good reputation in his family and community. *See* PSR ¶ 47-48.

### C.  Mr. Campion's Cooperation

Mr. Campion was one of the first individuals in this large-scale investigation to come in and cooperate with the government. As a result, his cooperation was presumably extremely valuable to the government. Mr. Campion met with agents, provided numerous spreadsheets, data and analysis regarding the properties in San Mateo, and explained the process. He also produced a large number of documents responsive to the government's subpoena in 2011. From his interviews and his documents, it is presumed that he was able to direct the government towards particular individuals, properties, information on how the conspiracy worked, and many other details, which at that very early stage, the government may not have been aware of. As a result of Mr. Campion's cooperation, the government should have been able to build a stronger case and bring additional charges against more individuals. Because the defendants Mr. Campion knew did not go to trial, he was not called to testify as a witness.

In addition to his assistance in Northern California, in approximately 2012, Mr. Campion alerted law enforcement to some suspected criminal activity in auctions in Southern California (unrelated to the present case). Mr. Campion does not know whether his information led to any

investigation, but he certainly made an effort to be cooperative and helpful with law enforcement.

Due to his cooperation, Mr. Campion requests a two-year probationary term. Also, in his plea agreement, the Government agreed to recommend a fine of $2,000-$20,000 (See Plea Agreement at ¶ 9). Mr. Campion recommends that this Court fine him in the lower sum of $2,000 – as credit for his cooperation and appropriately, to reflect the cash amount he received during the bid rigging.

## II.  OBJECTIONS TO PRESENTENCE REPORT

Paragraph 69

Mr. Campion recommends that the Court impose a fine of $2,000 and disagrees with the probation officer's assessment that he would be capable of paying a fine, in addition to restitution. While he could pay a fine over the course of years, a larger fine is certainly a significant expense for him. The probation officer identified a "positive monthly cash flow" of $459, though in his objections to the PSR, Mr. Campion identified a negative cash flow of $610, due to his varying income, his credit card debt, and his debt to his former business partner. In any event, a $20,000 fine would be a significant sum of money for Mr. Campion and his family, given their expenses and Mr. Campion's still-limited income.

Furthermore, the probation officer recommends a total monthly fine and restitution payment totaling $1000 per month. This is not feasible for Mr. Campion. The most that he can realistically afford at the present time would be $300 total per month. This can be re-evaluated bi-annually, as his income fluctuates.

## III.  THE APPLICABLE GUIDELINE RANGE IS THE "STARTING POINT" AND "INITIAL BENCHMARK" FOR THIS COURT

### A.  *Gall* and *Kimbrough* Clarified the Vast Discretion of this Court to Impose a Below-Guidelines Sentence

In *Gall v. United States*, 128 S. Ct. 586, 598 (2007), and *Kimbrough v. United States*, 128 S.Ct. 558 (2007), the Supreme Court set forth the proper analysis that district courts should follow in evaluating a proper sentence in the wake of *United States v. Booker*, 543 U.S. 220 (2005):

> A district court should begin all sentencing proceedings by correctly calculating the applicable Guideline range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553 (a) factors to determine whether they support the sentence requested by a party. In doing so, he may not presume that the Guideline range is reasonable. He must make an individualized assessment based on all the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.

*Gall,* 128 S.Ct. at 596-97 (citations omitted). Moreover, the Court is free to disagree with the Guideline ranges and policy considerations. *See Kimbrough v. United States*, 128 S.Ct. at 558. "It has been uniform and consistent in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Id.* at 598 (citing *Koon v. United States*, 518 U.S. 81, 113 (1996)). After *Gall*, it is clear that federal district courts possess great discretion on a case-by-case basis in handing down a sentence.

In this case, Mr. Campion is asking this Court not to take a rigid and deferential approach to his advisory guideline range, but rather to depart downward to a more appropriate sentence of 24 months of probation. While such a sentence is slightly below the recommendation by the probation department and below the numbers-driven guidelines, as described below, Mr. Campion hopes that this Court will realize that for a first-time offender such as Mr. Campion, it is not only appropriate, but due to the collateral consequences, is already excessively punitive. *See United States v. Whitehead*, 532 F.3d 991 (9th Cir. 2008) (no abuse of discretion in district court departing from a guideline range of 41-51 months to a sentence of probation and community service; court considered collateral consequences and defendant's repentance).

**B. The Ninth Circuit Has Declined to Apply a Presumption of Reasonableness to a Guidelines Sentence**

In *United States v. Carty,* 520 F.3d 984 (9th Cir. 2008) (en banc), the Ninth Circuit indicated that "the district court may not presume that the Guideline range is reasonable… nor should the Guidelines factor be given more or less weight than any other." *Id.* at 991 (citations

omitted). "While the Guidelines are to be respectfully considered, they are one factor among the § 3553(a) factors that are to be taken into account in arriving at an appropriate sentence." *Id.*, citing *Kimbrough*, 129 S.Ct. at 570; *Gall*, 128 S.Ct. at 594. An appellate court will only review the substantive reasonableness of the district court's decision by considering the "totality of the circumstances" giving, "due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.* Under *Carty*, while this Court must consider the applicable Guideline range, this range is *not* presumptively the correct sentence for Mr. Campion. The Court must consider Mr. Campion as an individual who is entitled to the consideration of the § 3553(a) factors and any decision the Court makes will be granted "due deference" should appellate review ensue.

Moreover, specific characteristics of individual defendants, which district courts were once prohibited or discouraged from considering, may now be considered. *See Rita v. United States*, 551 U.S. 338, 364-365 (2007) (Stevens, J., concurring) ("Matters such as age, education, mental, or emotional condition, medical condition, employment history, lack of guidance as a youth, family ties, or military, civic, charitable, or public service are not ordinarily considered under the guidelines . . . These are, however, matters that section 3553(a) authorizes a sentencing judge to consider"); *United States v. Lazenby* 439 F.3d 928, 933 (8th Cir. 2006) ("the other factors cited by the district court, though discouraged or prohibited departure factors under the mandatory guidelines, may be considered in applying the section 3553(a) factors under *Booker*").

In this case, the following factors warrant a variance from the advisory guidelines:

- Post-Offense Rehabilitation (8 years of law-abiding life since the last date of the alleged conduct).
- Defendant's lesser role in the alleged conspiracy. *United States v. Gomez*, 215 F.App'x 200 (4th Cir. 2007).
- Prison has greater significance for those imprisoned for the first time. *United States v. Paul*, 239 F. Appx 353 (9th Cir. 2007).

- Lengthy period of time since commencement of the offense. Here, 8 years.
- Defendant's otherwise outstanding character. *United States v. Wachowiak*, 496 F.3d 744 (7th Cir. 2007). *See* Jayne Decl., Exh. A.
- Aberrant behavior by the defendant. *See* Section 5K2.20 of the Guidelines and *United States v. Howe*, 543 F.3d 128 (3rd Cir. 2008).
- Excellent employment history. *United States v. Whitehead*, 532 F.3d 991 (9th Cir. 2008).
- Defendant's good deeds and past integrity. *United States v. Woods*, 159 F.3d 1132 (8th Cir. 1998).
- Defendant's personal characteristics and the offense were atypical. *United States v. Autrey*, 555 F.3d 864 (9th Cir. 2009).
- Defendant already punished by collateral consequences such as: public stigmatization, loss of various benefits and citizen rights due to being a felon, loss of financial stability, loss of employment opportunities and certain licenses, loss of educational opportunities.

Given this overall objective, Mr. Campion asks this Court to find that the correct sentence in the instant offense is one that will adequately punish him, but will not contradict the recognized purposes of sentencing and leave him far worse off. Applying these advisory guidelines, the calculation of Mr. Campion's sentence according to the United States Sentence Guidelines (USSG) is: 8-14 months (Level 11), but the appropriate and measured sentence should not include imprisonment.

**IV. A PROBATION TERM WOULD BEST SATISFY THE GOALS ARTICULATED IN § 3553(a)**

The Court's duty is to impose a sentence that is "sufficient but not greater than necessary" to achieve the four purposes of sentencing listed in 18 U.S.C. §3553(a)(2). *See Carty,* 520 F.3d at 991. These four purposes are: retribution; general deterrence; specific deterrence; and rehabilitation. 18 U.S.C. § 3553(a)(2)(A)-(D). In "determining the particular sentence to be imposed" the Court must consider these purposes, the nature and circumstances of the offense and

LAW OFFICES
JAYNE LAW GROUP, P.C.
260 CALIFORNIA STREET, SUITE 1001
SAN FRANCISCO, CALIFORNIA 94111

the history and characteristics of the defendant, the need to avoid unwarranted disparities, and the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a)(1)-(7).

### A. Need for Just Punishment in Light of Seriousness of the Offense

The need for retribution is measured by the degree of "blameworthiness," which "is generally assessed according to two kinds of elements: the nature and seriousness of harm caused or threatened by the crime; and the offender's degree of culpability in committing the crime, in particular, his degree of intent (*mens rea*), motives, roles in the offense, and mental illness or other diminished capacity." Richard S. Frase, *Excessive Prison Sentences, Punishment Goals, and the Eighth Amendment: "Proportionality" Relative to What?*, 89 Minn. L. Rev. 571, 590 (February 2005). The guidelines include none of the factors bearing on Mr. Campion's characteristics and background and his relative involvement is minimal compared to other defendants involved in bid rigging in the Northern District of California.

#### 1. Comparison to Other Sentenced Defendants in Bid-Rigging Conspiracies

This district has sentenced several other defendants in a bid-rigging conspiracy in the East Bay. From what counsel could ascertain, Mr. Campion's volume of commerce is <u>less than any of those individuals</u>. Of the sentenced cooperating defendants in the East Bay and amongst the defendants pending before this Court, the volumes of commerce have ranged from $1.3 million to nearly $13 million.[1] Mr. Campion's volume of commerce, by comparison, was stipulated to be $515,400 and therefore, he has received no upward adjustment for volume of commerce. His guideline range is the base level. (U.S.S.G. § 2R1.1). As his volume of commerce may be the lowest in any of the bid-rigging cases, Mr. Campion requests that his probationary term and his fine reflect his lesser involvement.

---

[1] For example, defendant Peter McDonough (Case No. 13- CR-00144 PJH) was sentenced to three years' probation with 9 months of electronic monitoring, with a volume of commerce was upwards of $9 million and $53,000 in payoffs to him. He was sentenced to a fine of $20,000, despite his exponentially greater involvement than Mr. Campion.

Judge Hamilton sentenced many cooperating defendants with large volumes of commerce to a term of probation, with an added condition of electronic monitoring. To the extent this Court will also consider sentencing Mr. Campion to a term of probation, he proposes a two-year probationary term, given that this case has been pending for seven years, during which time he has been under the watch of the court and has led a law-abiding life. Mr. Campion also recommends that this Court not sentence him to any term of electronic monitoring, as recommended by probation (even before a 5K1.1 departure), due to his minor role, his cooperation with the government, and that this was completely aberrant conduct which will never be repeated.

### B. Need for Deterrence

Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime & Just. 1, 28 (2006). According to "the best available evidence, . . . prisons do not reduce recidivism more than noncustodial sanctions." Francis T. Cullen *et al., Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science*, 91 Prison J. 48S, 50S-51S (2011). Thus, a custodial sentence has no statistical or evidentiary value as having a deterrent effect.

In Mr. Campion's case, a custodial sentence is not going to make any difference in deterring him in the future because this entire incident was an aberration and triggered by the company Mr. Campion kept. More importantly, the federal indictment and just the very notion of being a felon unexpectedly and for the first time in his life has made its impact on Mr. Campion; whatever his punishment, he would and could never bring himself from doing anything remotely similar to what occurred in this case.

Accordingly, Mr. Campion presents zero risk of re-offending and a non-custodial sentence, plus all of the collateral consequences, is a significant punishment to adequately promote respect for the law and general deterrence.

**C. Need to Protect the Public**

Mr. Campion is not a violent criminal. He is not someone with a history of criminal conduct. He is not even someone who would ever break the law again. Protecting the public, in Mr. Campion's case, should be given little weight in evaluating an appropriate sentence.

**D. A Probation Sentence Will Effectuate the Sentencing Goals Because of the Numerous Mitigating Factors**

The Probation Department and the Government would be hard-pressed to argue that a probationary sentence would fail to correct Mr. Campion's behavior. He has never been to jail or prison, has no prior convictions, and has a supportive family and community, employment skills, and a strong desire to work hard and make the most of his life in spite of the conviction. The sentence proposed herein – not insignificant for someone like Mr. Campion – *is* a pragmatic sentence that will serve the interests of deterrence, retribution and rehabilitation. Moreover, the end result after a probationary term is that Mr. Campion will forever face the consequences of this conviction.

Mr. Campion proposes two years of probation as a sufficient penalty for his conduct above, plus the fines and restitution, which will take some time for him to pay off, given his very limited positive cash flow.[2] See PSR ¶ 68. Such a sentence is justified given that Mr. Campion played a <u>minor role</u> in the alleged conspiracy, yet did not receive the benefit of a minor role adjustment.

Finally, the volume of commerce attributable to Mr. Campion himself is far less than many defendants who have pled to bid rigging. The payout received by Mr. Campion is also very small compared to others. Moreover, in the entire four months he participated, <u>Mr. Campion only took title to one property</u>. The rest of the restitution has to do with properties he allegedly withheld

---

[2] Mr. Campion requests that the Court waive the drug testing and the search and seizure conditions, as they are not necessary in his case.

from bidding on. He played a minor role, purchased one property, did not initiate rounds or payouts, operated on the sidelines or at the pressure of others, and was one of the first to cooperate with the government. As a result, Mr. Campion requests that his sentence reflect these various mitigating factors.

### E.  Proposed Sentencing Guidelines for 2018 for First Offenders

Another § 3553(a) factor which this Court may take into consideration is the United States Sentencing Commission's proposed amendment and corresponding view of first offenders. Under the Commission's analysis, Mr. Campion, with no prior convictions and a non-violent offense, is truly a "first offender." *See* https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20180412_prelim_rf_final.pdf. According to the Commission, recidivism is lowest in such first offenders. As a result, proposed guideline section 5C1.1(a), along with the directive in 28 U.S.C. § 994(j), instructs that a sentence <u>other than imprisonment</u> may be appropriate for a first offender who has not been convicted of a crime of violence or an otherwise "serious offense." While certainly not effective at the time of his sentencing, the Commission's analysis and attitude towards First Offenders can certainly be instructive in determining the appropriate sentence for Mr. Campion.

### CONCLUSION

Mr. Campion admits and knows far too well that it was irresponsible to have gotten involved in these secondary auctions and payoffs while attending auctions in San Mateo County. Mr. Campion should have resisted the pressures of the group and deeply regrets his poor decision-making. Mr. Campion is now asking this Court for a chance to continue to rebuild his life by a term of probation during which he would be working to make payments back to the alleged victims and the community, due to the fine and restitution.

Any lengthier custodial or probationary term potentially recommended by the Government would conflict with the goals articulated in the sentencing statute designed to ensure than an offender successfully rehabilitates and re-joins society as a fully functional and law-abiding

citizen. Mr. Campion has already proven himself to be a law-abiding citizen in the many years since the offense. As such, the defense respectfully requests that the court sentence Mr. Campion to a two-year term of probation, a $2,000 fine, $14,500 in restitution, *no* drug testing conditions, no search and seizure, but all other standard terms and conditions.

     Respectfully Submitted,

DATED:  April 19, 2018                                         /jmj/
                                                                         Julia Mezhinsky Jayne
                                                                         Counsel for Patrick Campion

LAW OFFICES
JAYNE LAW GROUP, P.C.
260 CALIFORNIA STREET, SUITE 1001
SAN FRANCISCO, CALIFORNIA 94111